# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF GEORGIA
# ATLANTA DIVISION

| | |
|---|---|
| CARLA TRACY, DARRYL BOWSKY, and DEBORAH HARRINGTON, *on behalf of themselves and those similarly situated*, | |
| Plaintiffs, | Judge Steven D. Grimberg |
| | Case No. 1:21-cv-02851 |
| v. | |
| ELEKTA, INC. and NORTHWESTERN MEMORIAL HEALTHCARE, | |
| Defendants. | |

## PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

# TABLE OF CONTENTS

**TABLE OF AUTHORITIES** .................................................................iv

**MOTION**.................................................................................................1

**MEMORANDUM IN SUPPORT** .........................................................2

**SUMMARY OF THE SETTLEMENT** ..................................................2

**I.    BACKGROUND** ...........................................................................3

A.  History of Litigation............................................................3

B. Negotiations and Settlement................................................4

C.  Summary of Settlement Terms.............................................4

    1. Settlement Benefits.........................................................5

        a.  *Reimbursement of Out-of-Pocket Losses up to $5,000*....................5

        b.  Pro Rata *GIPA Payments* ...........................5

        c.  Pro Rata *Cash Payments* ............................6

    2. Scope of the Release ....................................................6

    3. The Notice and Settlement Administration Plans  ................7

    4. Attorneys' Fees and Expenses......................................8

**II.    LEGAL STANDARD** ...................................................................9

**III.    ARGUMENT**..............................................................................10

A.  Certification of the Settlement Class is Appropriate. ............................10

    1. Numerosity ...................................................................11

    2. Commonality .................................................................12

    3. Typicality .....................................................................13

    4. Adequacy of Representation  ........................................13

    5. Certification under Rule 23(b)(3) is appropriate................................14

        a.  *Common Questions of Law and Fact Predominate* ......................14

        b.  *A Class is the Superior Method of Adjudicating this Case* ...........15

B.  The Proposed Settlement Satisfies the Standard for Preliminary Approval .......................................................................................17

1.  The proposed Settlement was reached after serious, informed, and arm's-length negotiations .......................................................17

2.  The proposed Settlement falls within the range of reasonableness and has no obvious deficiencies, and thus, warrants issuance of class notice and a hearing on final approval of settlement ...................................................................19

3.  The *Bennett* factors support preliminary approval.........................19

C.  The Court Should Appoint the Proposed Class Representatives, Class Counsel, and Settlement Administrator .......................................22

D.  The Proposed Form and Manner of Notice is Reasonable and Should be Approved....................................................................................23

E.  The Court Should Approve a Settlement Schedule ................................25

IV.  CONCLUSION ...............................................................................................25

CERTIFICATE OF SERVICE AND LOCAL RULE 7.1(D) CERTIFICATION ...................................................................................................28

# TABLE OF AUTHORITIES

Page(s)

## Cases

*Agnone v. Camden Cnty.*,
  No. 2:14-cv-00024-LGW-BKE, 2019 WL 1368634
  (S.D. Ga. Mar. 26, 2019) .....................................................................................25

*Amchem Prods. Inc. v. Windsor*,
  521 U.S. 591 (1997)............................................................................ 10, 14, 16

*Anderson v. Garner*,
  22 F. Supp. 2d 1379 (N.D. Ga. 1997).................................................................11

*Bennett v. Behring Corp.*,
  737 F.2d 982 (11th Cir. 1984) ............................................................................18

*Burrows v. Purchasing Power, LLC*,
  No. 1:12-CV-22800, 2013 WL 10167232 (S.D. Fla. Oct. 7, 2013) ....................20

*Cole v. Stateserv Med. of Fla., LLC*,
  No. 8:17-cv-829, 2018 WL 3860263 (M.D. Fla. June 19, 2018)........................18

*Columbus Drywall & Insulation, Inc. v. Masco Corp.*,
  258 F.R.D. 545 (N.D. Ga. July 20, 2007).................................... 11, 13, 18, 20, 21

*Cotton v. Hinton*,
  559 F.2d 1326 (5th Cir. 1977) ............................................................................21

*Dep't of Labor v. McConnell*,
  305 Ga. 812, 828 S.E.2d 352 (Ga. 2019)...........................................................20

*Dickens v. GC Servs. Ltd. P'ship*,
  706 F. App'x 529 (11th Cir. 2017)......................................................................16

*Eisen v. Carlisle & Jacquelin*,
  417 U.S. 156 (1974)............................................................................................23

*Fresco v. Auto Data Direct, Inc.*,
  No. 03–61063–CIV, 2007 WL 2330895 (S.D. Fla. May 11, 2007)......................9

*In re Checking Acct. Overdraft Litig.*,
 275 F.R.D. 654 (S.D. Fla. 2011) ............................................................17

*In re Equifax Inc. Customer Data Sec. Breach Litig.*,
 999 F.3d 1247 (11th Cir. 2021) .................................................. 9, 10, 14

*In re Equifax Inc. Customer Data Sec. Breach Litig.*,
 No. 1:17-MD-2800-TWT, 2020 WL 256132
 (N.D. Ga. Mar. 17, 2020)........................................... 12, 13, 15, 19

*In re Terazosin Hydrochloride*,
 220 F.R.D. 672 (S.D. Fla. 2004) ...........................................................15

*In re The Home Depot, Inc., Customer Data Sec. Breach Litig.*,
 No. 1:14-MD-02583-TWT, 2016 WL 6902351 (N.D. Ga. Aug. 23, 2016).........12

*In re U.S. Oil & Gas Litig.*,
 967 F.2d 489 (11th Cir. 1992) .................................................... 10, 21

*Klay v. Humana, Inc.*,
 382 F.2d 1241 (11th Cir. 2004) ............................................................14

*Mashburn v. Nat'l Healthcare, Inc.*,
 684 F. Supp. 660 (M.D. Ala. 1988) ......................................................21

*Mullane v. Cent. Hanover Bank & Tr. Co.*,
 339 U.S. 306 (1950)...............................................................................23

*Sacred Heart Health Sys., Inc. v. Humana Military Healthcare Servs., Inc.*,
 601 F.3d 1159 (11th Cir. 2010) ............................................................15

*Wal-Mart Stores, Inc. v. Dukes*,
 131 S. Ct. 2541 (2011).........................................................................12

*Woodward v. NOR–AM Chem. Co.*,
 No. Civ-94-0870, 1996 WL 1063670 (S.D. Ala. May 23, 1996).........................21

## Statutes

Cal. Civ. Code § 1798.150....................................................................6

Ga. Code Ann. § 13-6-11 .....................................................................3

## Rules

Fed. R. Civ. P. 23 ......................................................................................1, 24

Fed. R. Civ. P. 23(a).......................................................................... 10, 11, 13

Fed. R. Civ. P. 23(a)(1)......................................................................................11

Fed. R. Civ. P. 23(a)(2)......................................................................................12

Fed. R. Civ. P. 23(a)(3)......................................................................................13

Fed. R. Civ. P. 23(a)(4)......................................................................................13

Fed. R. Civ. P. 23(b) ......................................................................................10

Fed. R. Civ. P. 23(b)(3)............................................................. 11, 14, 15, 17

Fed. R. Civ. P. 23(b)(3)(D) ...............................................................................14

Fed. R. Civ. P. 23(c)(2)(A) ...............................................................................25

Fed. R. Civ. P. 23(c)(2)(B) .......................................................................... 23, 24

Fed. R. Civ. P. 23(e) .......................................................... 1, 2, 9, 10, 22

Fed. R. Civ. P. 23(e)(1).....................................................................................23

Fed. R. Civ. P. 23(h)(1).....................................................................................24

## Other Authorities

Annotated Manual for Complex Litigation (Fourth) § 21.662 (2012) ...................10

Manual for Complex Litigation (Third) § 30.41 (1995)............................................9

## MOTION FOR PRELIMINARY APPROVAL

Under Federal Rule of Civil Procedure Rule 23(e), and subject to Court approval, Plaintiffs Carla Tracy, Darryl Bowsky, and Deborah Harrington (collectively "Plaintiffs"), on behalf of themselves and all others similarly situated, respectfully move the Court for preliminary approval of the proposed settlement of this class action under Rule 23 of the Federal Rules of Civil Procedure.

Plaintiffs request that the Court grant the Motion and enter a Preliminary Approval Order: (a) preliminarily certifying the Settlement Class, appointing Class Representatives for the Settlement Class, and appointing Class Counsel as counsel for the Settlement Class; (b) preliminarily approving the proposed settlement as appearing sufficiently fair, adequate, and reasonable to warrant the issuance of the Class Notice; (c) approving the proposed notice plan as meeting the requirements of Rule 23 and due process; and (d) granting any related relief as described in the attached memorandum. Defendants Elekta, Inc. and Northwestern Memorial Healthcare have reviewed this filing and do not oppose this motion.

Unless otherwise stated, all capitalized terms herein are defined as in the Settlement Agreement, **Exhibit 1**.

1

## MEMORANDUM IN SUPPORT

## <u>SUMMARY OF THE SETTLEMENT</u>

Plaintiffs and the proposed Class have reached a nationwide class action settlement with Defendants Elekta, Inc. ("Elekta") and Northwestern Memorial Healthcare ("Northwestern") for a $8,900,000.00 non-reversionary common fund to resolve claims arising from an April 2021 data security incident affecting Elekta's computer networks (the "Data Security Incident"). *See* Settlement Agreement ("S.A.") (**Exhibit 1**); *see also* Declaration of Terence R. Coates in Support of Preliminary Approval of Class Action Settlement ("Coates Decl.") (**Exhibit 2**); Declaration of Brandon Schwartz Regarding Proposed Notice Plan and Administration ("EisnerAmper Decl.") (**Exhibit 3**). The Settlement provides significant relief to Settlement Class Members and is squarely within the range of reasonableness necessary for this Court to grant preliminary approval of the settlement under Rule 23(e). The Court should preliminarily approve the Settlement Agreement, direct that notice be sent to all Settlement Class Members in the manner outlined below, set deadlines for exclusions, objections, and briefing on Plaintiffs' Motion for Final Approval and Petition for Attorneys' Fees and Expenses, and set a date for a Final Approval Hearing.

## I.    BACKGROUND

### A.    History of Litigation

In May 2021, Elekta worked with its healthcare customers, including Northwestern, (collectively, "Elekta's Customers") to send notice of the Data Security Incident to Plaintiffs and Settlement Class Members informing them that their information may have been compromised in the Data Security Incident. The Data Security Incident was understood to have impacted approximately 497,000 individuals. S.A. § 1.42. On February 2, 2022, Plaintiffs filed a Consolidated Amended Class Action Complaint [ECF No. 33] alleging that Defendants failed to implement and maintain reasonable data security measures. Plaintiffs asserted claims for negligence, negligence per se, breach of implied, breach of contract— third-party beneficiaries, Violation of Illinois Genetic Information Privacy Act ("GIPA"), declaratory and injunctive relief, and statutory claims under Ga. Code Ann. § 13-6-11. In March 2022, Defendants filed a motion seeking to dismiss Plaintiffs' claims, along with accompanying documents, which was subsequently briefed by both parties. *See* ECF Nos. 43, 43-1, 44, 47. The Court denied Defendants' motion as to the causes of action for negligence, negligence per se, breach of implied contract as to Defendant Northwestern, and violations of GIPA as to one Plaintiff. Order, March 32, 2023 [ECF No. 61]. The Court granted

Defendants' motion as to the other causes of action. *Id.* Thereafter, the Parties engaged in litigation, including exchanging written discovery. Coates Decl. ¶ 6.

### B.    Negotiations and Settlement

The Settlement is the result of arm's-length negotiations and hard bargaining. *Id.* ¶ 10. The Parties had settlement discussions during the course of the litigation and jointly decided to engage in the mediation process. *Id.* ¶ 7. On May 10, 2024, the Parties engaged in their second mediation attempt – an arm's-length, full-day mediation session with mediator Jill R. Sperber at which they reached an agreement in principle. *Id.* ¶ 8. The Parties were able to resolve the matter for a non-reversionary common fund settlement of $8,900,000.00. S.A. § 2.2. This Settlement, if approved, will resolve all claims related to the Data Security Incident on behalf of the Settlement Class. *Id.*, § 9.1. The Settlement in principle was then negotiated in detail in the form of the thorough Settlement Agreement. Coates Decl. ¶ 10.

### C.    Summary of Settlement Terms

Under the proposed Settlement, Elekta will pay $8,900,000.00 to establish the Settlement Fund to be distributed to Settlement Class Members under the Settlement Agreement. The Settlement defines the Settlement Class as follows:

> All persons residing in the United States who had their Sensitive Information hosted by Elekta compromised as a result of the Data Security Incident.

S.A. § 1.42.  There is an Illinois GIPA Subclass defined as:

> All persons residing in the State of Illinois who had Genetic Information hosted by Elekta compromised as a result of the Data Security Incident.

*Id.* §1.20. The Settlement Class consists of approximately 497,000 individuals nationwide. *Id.* § 1.42. The Settlement Fund will be used to make payments to Settlement Class Members and to pay the costs of Notice and Administrative Expenses, and attorneys' fees and expenses. *Id.* § 2.3.

### 1. Settlement Benefits

#### a. *Reimbursement of Out-of-Pocket Losses up to $5,000*

Settlement Class Members may receive monetary payments by submitting a claim form selecting the option for reimbursement of documented Out-of-Pocket Losses up to $5,000 per individual. *Id.* § 3.2.

#### b. Pro Rata *GIPA Payments*

Settlement Class Members who were residents of Illinois who had Genetic Information hosted by Elekta and compromised in the Data Security Incident may submit a claim for the GIPA Cash payment, which will be made on a *pro rata* payment of 50% of the Settlement Fund after distribution of attorneys' fees, litigation expenses, settlement administration, and out-of-pocket losses. *Id.* § 3.1(a). The GIPA Cash payments will be capped at $1,000.00. *Id.*

### c. Pro Rata *Cash Payments*

Settlement Class Members not electing and/or eligible to receive a GIPA Cash Payment may submit a claim for a *Pro Rata* Cash Payment. The amount of the payment will be determined *pro rata* based on 50% of the amount remaining in the Settlement Fund following distribution of attorneys' fees, litigation expenses, settlement administration, and out-of-pocket losses (plus any amounts remaining from the GIPA Cash Payment, to the extent the $1,000 cap per GIPA Cash Payment is reached). *Id.* § 3.1(b).

### 2. Scope of the Release

In exchange for consideration above, Settlement Class Members who do not timely and validly exclude themselves from the Settlement will be deemed to have released Defendants, Elekta's Customers, and certain related entities from claims arising from or related to the Data Security Incident at issue in this litigation. *Id.* §§ 1.34, 7.2, 9.1. The scope of the released claims is as follows:

> any and all claims and causes of action, both known and unknown (including Unknown Claims (defined below)), including, without limitation, any causes of action under California Civil Code § 1798.150 or § 17200 *et seq.* and all similar statutes in effect in any states in the United States as defined herein; negligence; negligence per se; breach of contract; breach of implied contract; breach of fiduciary duty; breach of confidence; invasion of privacy; misrepresentation (whether fraudulent, negligent, or innocent); unjust enrichment; bailment; wantonness; failure to provide adequate notice pursuant to any breach notification statute or common law duty; breach of any consumer protection statute; and including, but not limited to, any and all claims for damages, injunctive relief, disgorgement, declaratory relief,

equitable relief, attorneys' fees and expenses, pre-judgment interest, credit monitoring services, the creation of a fund for future damages, statutory damages, punitive damages, special damages, exemplary damages, restitution, the appointment of a receiver, and any other form of relief that either has been asserted, or could have been asserted, by any Settlement Class Member against any of the Released Persons (defined below) based on, relating to, concerning or arising out of the Data Security Incident and/or alleged theft of Sensitive Information before the Effective Date or the allegations, facts, or circumstances described in the Litigation. Released Claims shall not include the right of any Settlement Class Member or any of the Released Persons to enforce the terms of the settlement contained in this Settlement Agreement and shall not include the claims of Settlement Class Members who have timely excluded themselves from the Settlement Class.

*Id.* § 1.35.

### 3.  The Notice and Settlement Administration Plans

Under the Settlement Agreement, Class Counsel, with Defendants' approval, has selected EisnerAmper to be the Settlement Administrator, who will provide the Settlement Class with notice and administer the claims. *Id.* § 1.40.  Class Counsel's decision to select EisnerAmper was based on the scope of settlement administration services EisnerAmper proposed balanced against the cost for such services. Coates Decl. ¶ 15. Class Counsel understands that any settlement administration costs and expenses will be deducted from the Settlement Fund and as a result, Class Counsel sought the settlement robust, yet cost-effective services for the Settlement Class. *Id.*

Within ten (10) days after the entry of the preliminary approval order, Defendants will provide a list of the Settlement Class members to the Class

Administrator, based on Defendants' best good-faith reasonable efforts to identify Settlement Class Members.  S.A. § 6.1.  Within 30 days of entry of the preliminary approval order, the Settlement Administrator will send, via U.S. Mail, the "Short Notice" to all Settlement Class Members for whom the Settlement Administrator has a valid mailing address. *Id.*  The Short Form Notice will set forth the time and place for the Final Approval Hearing and make clear that objections must be timely filed in advance in order to be heard. *Id.* § 6.2. The Class Administrator will also establish a dedicated website and will maintain it through the claims period, which will have forms of the Short Notice, Long Notice, and the Claim Form approved by the Court, as well as the Settlement Agreement. *Id.* § 5.2. The Settlement Administrator will also provide any of the documents described in the preceding sentence upon request. *Id.* Further, the Class Administrator will put in place a toll-free help line staffed with an adequate number of operators to address inquiries from Settlement Class Members. *Id.*

EisnerAmper will also be responsible for accounting for all the claims made and exclusions requested, determining eligibility, and disbursing funds from the Settlement Fund directly to Settlement Class Members. *Id.* §§ 3.2(b), 3.4, 4.2, 12.1.

### 4.  Attorneys' Fees and Expenses

Class Counsel will separately seek an award of attorneys' fees not to exceed 1/3 (33.33%) of the Settlement Fund (*i.e.*, $2,966,666.66), and for reimbursement of

Class Counsel's reasonable litigation expenses. *Id.* § 10.1. The Fee Award and Expenses application will be filed at least fourteen (14) days before Objection and Opt-Out Deadlines. *Id*. at 24.

## II.    LEGAL STANDARD

Under Fed. R. Civ. P. 23(e), a class action may be settled only with court approval, which requires the court to find the settlement "fair, reasonable, and adequate". *See In re Equifax Inc. Customer Data Sec. Breach Litig.*, 999 F.3d 1247, 1273 (11th Cir. 2021). Fed. R. Civ. P. 23(e) provides three steps for the approval of a proposed class action settlement: (1) the Court must preliminarily approve the proposed settlement; (2) members of the class must be given notice of the proposed settlement; and (3) a fairness hearing must be held, after which the court must determine whether the proposed settlement is fair, reasonable, and adequate. *See generally* Fed. R. Civ. P. 23(e). Courts in this Circuit have held that the Court must first conduct a preliminary review to determine whether the proposed class settlement "is within the range of possible approval." *Fresco v. Auto Data Direct, Inc.*, No. 03–61063–CIV, 2007 WL 2330895, at *4 (S.D. Fla. May 11, 2007) (internal citations omitted); *see also* MANUAL FOR COMPLEX LITIGATION (Third) § 30.41 (1995). This involves both preliminary certification of the class and an initial assessment of the proposed settlement. *Id.* Plaintiffs request that the Court

preliminarily approve the proposed Settlement, the first step in approving a class action settlement in accordance with Fed. R. Civ. P. 23(e).

During the preliminary approval proceedings, "the questions are simpler, and the court is not expected to, and probably should not, engage in analysis as rigorous as is appropriate for final approval." ANNOTATED MANUAL FOR COMPLEX LITIGATION (Fourth) § 21.662 (2012). There is a strong judicial and public policy favoring the voluntary conciliation and settlement of complex class action litigation. *In re U.S. Oil & Gas Litig.*, 967 F.2d 489, 493 (11th Cir. 1992). Generally, a large amount of discretion is afforded to courts in approving class action settlements, and the Eleventh Circuit has held the "degree of deference to a decision approving a class action settlement makes sense . . . [s]ettlements resolve differences and bring parties together for a common resolution." *In re Equifax*, 999 F.3d at 1273 (internal citations omitted).

## III.    ARGUMENT

### A.    Certification of the Settlement Class is Appropriate

The Supreme Court has recognized that the benefits of a proposed settlement of a class action can be realized only through the certification of a settlement class. *See Amchem Prods. Inc. v. Windsor*, 521 U.S. 591, 620 (1997). For the Court to certify a class, Plaintiffs must satisfy all of the requirements of Rule 23(a), and one of the requirements of Rule 23(b). The four requirements of Rule 23(a) are

numerosity, commonality, typicality, and adequacy. *See* Fed. R. Civ. P. 23(a). Here, Plaintiffs seek certification of the Settlement Class under Rule 23(b)(3), which provides that certification is appropriate when common question of law or fact for plaintiffs' claims predominate over any individual issues and a showing that the class action mechanism is the superior method efficiently handling the case. Fed. R. Civ. P. 23(b)(3). As discussed below, these requirements are met here for settlement purposes.

### 1. Numerosity

The numerosity requirement under Rule 23(a)(1) is satisfied where the class is so numerous that joinder of all class members is impracticable. Fed. R. Civ. P. 23(a)(1). There is no specific number below which class action relief is automatically precluded. "[T]o demonstrate numerosity, "plaintiffs need not prove that joinder is impossible; rather, plaintiffs 'need only show that it would be extremely difficult or inconvenient to join all members of the class.'" *Columbus Drywall & Insulation, Inc. v. Masco Corp.*, 258 F.R.D. 545, 554 (N.D. Ga. July 20, 2007) (quoting *Anderson v. Garner*, 22 F. Supp. 2d 1379, 1384 (N.D. Ga. 1997)). Here, the joinder of over 497,000 Settlement Class Members would be impracticable, and thus, the numerosity element is satisfied.

## 2. Commonality

Rule 23(a)(2) requires that there be "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). The Supreme Court has stated that Rule 23(a)(2)'s commonality requirement is satisfied where the plaintiffs assert claims that "depend upon a common contention" that is "of such a nature that it is capable of class-wide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2545 (2011).

Here, the claims turn on whether Defendants maintained a data security environment adequate to protect Settlement Class Members' Sensitive Information. Order, [ECF 61] at 2. Resolution of that inquiry revolves around evidence that does not vary from Settlement Class Member to Settlement Class Member, and so can be fairly resolved—at least for purposes of settlement—for all Settlement Class Members at once. Courts in this District have previously addressed this requirement in the context of cybersecurity incident class actions and found it readily satisfied. *In re Equifax Inc. Customer Data Sec. Breach Litig.*, No. 1:17-MD-2800-TWT, 2020 WL 256132, at *11 (N.D. Ga. Mar. 17, 2020) (citing *In re The Home Depot, Inc., Customer Data Sec. Breach Litig.*, No. 1:14-MD-02583-TWT, 2016 WL 6902351, at *2 (N.D. Ga. Aug. 23, 2016) (finding that multiple common issues center on the defendant's conduct, satisfying the commonality requirement)).

### 3.  Typicality

To satisfy the typicality requirement of Rule 23(a)(3), the claims or defenses of the representative parties must be typical of the claims or defenses of the class. In the *Equifax* MDL, Judge Thrash found that the typicality requirement had been met as "[t]he claims are also based on the same overarching legal theory that [Defendant] failed in its common-law duty to protect their personal information." *In re Equifax*, 2020 WL 256132, at *12.

Here, the claims all involve Defendants' conduct toward the Settlement Class Members, and Plaintiffs' and the Class's claims are based on the same legal theories. Thus, Plaintiffs' claims are typical of those of the claims of the Settlement Class, and for purposes of settlement they are appropriate Settlement Class Representatives.

### 4.  Adequacy of Representation

The final requirement of Rule 23(a) is that "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). For this analysis, courts consider: "(1) whether [the class representatives] have interests antagonistic to the interests of other class members; and (2) whether the proposed class counsel has the necessary qualifications and experience to lead the litigation." *Columbus Drywall*, 258 F.R.D. at 555. Rule 23(a)(4) "serves to uncover conflicts of

interest between named parties and the class they seek to represent." *Amchem*, 521 U.S. at 594.

Plaintiffs have no conflicts with the Settlement Class and have been engaged and active participants in the case. Coates Decl. ¶ 24. Moreover, Class Counsel have significant experience in handling data privacy class actions like this one. *Id.* ¶ 26.

### 5. Certification under Rule 23(b)(3) is appropriate

Plaintiffs seek to certify a Class under Rule 23(b)(3), which has two components: predominance and superiority. Rule 23(b)(3) requires that "questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." *In re Equifax*, 999 F.3d at 1275. When assessing predominance and superiority, the court may consider that the class will be certified for settlement purposes only, and that a showing of manageability at trial is not required. *See Amchem*, 521 U.S. at 620 ("Confronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems, *see* Fed. Rule Civ. Pro. 23(b)(3)(D), for the proposal is that there be no trial.").

#### a. Common Questions of Law and Fact Predominate

In this case, the common factual and legal questions all cut to the issues at the heart of the litigation. *See Klay v. Humana, Inc.*, 382 F.3d 1241, 1264 (11th Cir.

2004) citing *In re Terazosin Hydrochloride*, 220 F.R.D. 672, 694 (S.D. Fla. 2004) ("When there exists generalized evidence which proves or disproves an element on a simultaneous, class-wide basis, since such proof obviates the need to examine each class member's individual position, the predominance test will be met."). Indeed, the answers to these questions are not tangential or theoretical such that the litigation will not be advanced by certification. Rather, they go right to the center of the controversy, and the answers will be the same for each Settlement Class Member. As such, because the class-wide determination of this issue will be the same for everyone and will determine whether any class member has a right of recovery, the predominance requirement is readily satisfied for purposes of this settlement.

### b. A Class is the Superior Method of Adjudicating this Case

The second prong of Rule 23(b)(3)—that a class action is superior to other available methods for the fair and efficient adjudication of the controversy—is also readily satisfied for the purpose of this settlement. *See* Fed. R. Civ. P. 23(b)(3). A superiority analysis pursuant to rule 23(b)(3) involves an examination of "the relative advantages of a class action suit over whatever other forms of litigation might be realistically available to the plaintiffs." *Sacred Heart Health Sys., Inc. v. Humana Military Healthcare Servs., Inc.*, 601 F.3d 1159, 1183-84 (11th Cir. 2010) (internal quotation omitted). The focus is on the efficiency of the class method. *In re Equifax*, 2020 WL 256132, at *14. The Agreement provides Settlement Class

Members with certain relief and contains well-defined administrative procedures to ensure due process. This includes the right of any Settlement Class Member to object to it or to request exclusion. Moreover, there is no indication that Settlement Class Members have an interest in individual litigation or an incentive to pursue their claims individually, given the amount of damages likely to be recovered, relative to the resources required to prosecute such an action. *See Dickens v. GC Servs. Ltd. P'ship*, 706 F. App'x 529, 538 (11th Cir. 2017) (describing "the ways in which the high likelihood of a low per-class-member recovery militates in favor of class adjudication").

Adjudicating individual actions here is impracticable: the amount in dispute for individual class members is too small, the technical issues involved are too complex, and the required expert testimony and document review too costly. In no case are the individual amounts at issue sufficient to allow anyone to file and prosecute an individual lawsuit—at least not with the aid of competent counsel. Instead, the individual prosecution of Settlement Class Members' claims would be prohibitively expensive, and, if filed, would needlessly delay resolution and lead to inconsistent rulings. Because this Action is being settled on a class-wide basis, such theoretical inefficiencies are resolved, and the Court need not consider further issues of manageability relating to trial. *See Amchem*, 521 U.S. at 620 ("[c]onfronted with a request for settlement-only class certification, a district court need not inquire

whether the case, if tried, would present intractable management problems, for the proposal is that there will be no trial").

Thus, the Court may certify the Settlement Class for settlement under Rule 23(b)(3).

## B.    The Proposed Settlement Satisfies the Standard for Preliminary Approval

After it has been determined that certification of the Settlement Class is appropriate, the Court must then determine whether the Settlement Agreement is worthy of preliminary approval of providing notice to the class. Courts in this Circuit have held that preliminary approval is appropriate "where the proposed settlement is the result of the parties' good faith negotiations, there are no obvious deficiencies, and the settlement falls within the range of reason." *In re Checking Acct. Overdraft Litig.*, 275 F.R.D. 654, 661 (S.D. Fla. 2011) (internal quotations omitted). Other courts have looked to the *Bennett* factors to determine whether preliminary approval is appropriate. The *Bennett* factors include,

> (1) the likelihood of success at trial; (2) the range of possible recoveries; (3) the point on or below the range of possible recoveries at which a settlement is fair, adequate and reasonable; (4) the complexity, expense and duration of litigation; (5) the substance and degree of opposition to the settlement; and (6) the stage of the proceedings at which the settlement was achieved.

*Columbus Drywall*, 258 F.R.D. at 557 (quoting *Bennett v. Behring Corp.*, 737 F.2d 982, 986 (11th Cir. 1984)). The Settlement warrants preliminary approval under each approach.

### 1. The proposed Settlement was reached after serious, informed, and arm's-length negotiations

First, arm's-length negotiations conducted by competent counsel with the assistance of a third-party mediator support finding that the settlement is fair. *See Cole v. Stateserv Med. of Fla., LLC*, No. 8:17-cv-829, 2018 WL 3860263, at *2 (M.D. Fla. June 19, 2018) (noting that the assistance of a mediator and negotiations between competent counsel "weigh[s] om favor of preliminarily approving" the settlement). In this case, the Settlement was the result of intensive, arm's-length negotiations between experienced attorneys with vast experience handling data breach class action cases. Coates Decl. ¶¶ 8, 10. The Settlement came about only after two mediation sessions with an experienced mediator. Settlement negotiations here took place over the course of several months. *Id*. ¶¶ 8, 9. There is no evidence that any collusion or illegality existed during settlement negotiations. Class Counsel support the Settlement as fair and reasonable, and all certify that it was reached at arm's-length. *Id*. ¶ 10.

## 2. The proposed Settlement falls within the range of reasonableness and has no obvious deficiencies, and thus, warrants issuance of class notice and a hearing on final approval of settlement

Although Plaintiffs believe that the claims they have asserted are meritorious and the Settlement Class would ultimately prevail at trial, continued litigation against Defendants poses significant risks that make any recovery for the Settlement Class uncertain. The Settlement's fairness is underscored by consideration of the obstacles that the Settlement Class would face in ultimately succeeding on the merits, as well as the expense and likely duration of the litigation. Despite the risks involved with further litigation, the Settlement Agreement provides outstanding benefits as Settlement Class Members can claim documented losses up to $5,000. Moreover, there are no grounds to doubt the fairness of the Settlement or other obvious deficiencies, such as unduly preferred treatment of Plaintiffs or excessive attorney compensation. Plaintiffs, like all other Settlement Class Members, will receive their settlement benefits consistent with the Settlement Agreement.

## 3. The *Bennett* factors support preliminary approval

Although typically a consideration at the final approval stage, here, the *Bennett* factors still point towards preliminary approval. *First*, the benefits of settlement outweigh the risk of trial. Here, Settlement Class Members can claim documented losses up to $5,000. As Judge Thrash noted when approving the *Equifax* settlement, "[Defendant] would likely renew its arguments under Georgia law that it

has no legal duty to safeguard personal information, arguments that were strengthened following the Supreme Court of Georgia's decisions in *Georgia Dep't of Labor v. McConnell*, 305 Ga. 812, 828 S.E.2d 352 (Ga. 2019)." *In re Equifax*, 2020 WL 256132, at *7. Here, Defendants would likely assert the same argument, and although Plaintiffs believe they have strong legal grounds to counter these potential arguments, the Settlement's benefits outweigh the risk of trial.

*Second* and *third*, the Settlement is within the range of possible recoveries and is fair, adequate, and reasonable. The second and third *Bennett* factors are often considered together. *See Burrows v. Purchasing Power, LLC*, No. 1:12-CV-22800, 2013 WL 10167232, at *6 (S.D. Fla. Oct. 7, 2013). In determining whether a settlement is fair and reasonable, the court must also examine the range of possible damages that Plaintiffs could recover at trial and combine this with an analysis of Plaintiffs' likely success at trial to determine if the settlement falls within the range of fair recoveries. *Columbus Drywall*, 258 F.R.D. at 559. Here, Settlement Class Members have the ability to claim reimbursement for documented Monetary Losses up to $5,000 and the ability to receive a cash payment. Coates Decl. ¶ 12; S.A. § 3.2. Finally, Settlement Class Members who were residents of Illinois and had Genetic Information, as defined by GIPA, hosted by Elekta that was compromised in the Data Security Incident can submit a claim for a GIPA Cash Payment, capped at $1,000.00. per valid GIPA Cash Payment claim. Coates Decl. ¶ 12; S.A. § 3.1.

Accordingly, the Settlement is eminently reasonable, especially considering that it avoids the potential contingencies of continued litigation, and the size of the breach, itself.

*Fourth,* continued litigation would be lengthy and expensive. As discussed in the first prong of the *Bennett* factors, data breach litigation is often difficult and complex, particularly in Georgia. A settlement here is beneficial to all parties, including the Court. *Woodward v. NOR–AM Chem. Co.*, No. Civ-94-0870, 1996 WL 1063670, at *21 (S.D. Ala. May 23, 1996) ("Complex litigation . . . 'can occupy a court's docket for years on end, depleting the resources of the parties and the taxpayers while rendering meaningful relief increasingly elusive.'") (quoting *In re U.S. Oil & Gas Litig.*, 967 F.2d at 493).

*Fifth*, there has not been an opposition to the Settlement. This factor is better considered after notice has been provided to Settlement Class Members and they are given the opportunity to object. *See Columbus Drywall*, 258 F.R.D. at 561. Thus, at this point, this factor should not weigh heavily in the analysis.

*Sixth*, Plaintiffs have sufficient information to evaluate the merits and negotiate a fair, adequate and reasonable settlement. Courts have approved settlements at even earlier stages of the litigation. *See, e.g., Cotton v. Hinton*, 559 F.2d 1326, 1332 (5th Cir. 1977) (affirming approval of settlement with little discovery); *see also Mashburn v. Nat'l Healthcare, Inc.*, 684 F. Supp. 660, 669

(M.D. Ala. 1988) (holding that early settlements are to be encouraged, and accordingly, only some reasonable amount of discovery is required to determine the fairness of the settlement). Defendants filed a motion to dismiss, which were thoroughly briefed by the parties. *See* ECF Docs. 43, 43-1, 44, 47. The case has been thoroughly investigated by Counsel experienced in data breach litigation. Coates Decl. ¶¶ 1, 2, 5.

Accordingly, the Court should find that the proposed Settlement is fair, reasonable, and adequately protects the interests of the proposed Class.

### C. The Court Should Appoint the Proposed Class Representatives, Class Counsel, and Settlement Administrator

Plaintiffs seek to be appointed as Class Representatives for the Class. As discussed above, Plaintiffs have cooperated with Class Counsel, provided informal discovery, and assisted in the preparation of the Complaint. Moreover, Plaintiffs are committed to continuing to vigorously prosecute this case, including overseeing the Notice Plan, and defending the Settlement Agreement against any objectors, all the way through the Court's final approval. Coates Decl. ¶ 24. Because they are adequate representatives and have reach received notices from Defendants noting that Plaintiffs Sensitive Information was compromised in the Data Security Incident, the Court should appoint them as class representatives. Second, for the reasons previously discussed with respect to adequacy of representation, the Court should

designate Terence R. Coates of Markovits, Stock & DeMarco, LLC and Bryan L. Bleichner of Chestnut Cambronne PA as Class Counsel.

Finally, the Parties have agreed that EisnerAmper shall act as Settlement Administrator. EisnerAmper and its principals have a long history of successful settlement administrations in class actions. EisnerAmper Decl. ¶ 2.

### D.    The Proposed Form and Manner of Notice to the Class is Reasonable and Should be Approved

Under Rule 23(e), the Court must "direct notice in a reasonable manner to all class members who would be bound" by the proposed settlement. Fed. R. Civ. P. 23(e)(1). Notice of a proposed settlement to class members must be the "best notice practicable." Fed. R. Civ. P. 23(c)(2)(B). "[B]est notice practicable" means "individual notice to all members who can be identified through reasonable effort." *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 173 (1974). The best practicable notice is that which "is reasonably calculated, under all of the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306, 314 (1950).

The Notice Plan set forth in the Settlement Agreement provides the best notice practicable under the circumstances. The Parties negotiated the form of the Notice with the approval of a professional notice provider, EisnerAmper. The Notice will be disseminated to all persons who fall within the definition of the Class and whose

names and addresses can be identified with reasonable effort and through databases tracking nationwide addresses and address changes. EisnerAmper Decl. ¶ 15. In addition, EisnerAmper will administer the Settlement Website containing important and up-to-date information about the Settlement. *Id.* ¶ 12.

Moreover, Rule 23(h)(1) requires that "[n]otice of the motion [for attorneys' fees] must be served on all parties and, for motions by class counsel, directed to class members in a reasonable manner." The proposed Notice Plan satisfies the requirements of Rule 23(h)(1), as it notifies Settlement Class Members that Class Counsel will apply to the Court for attorneys' fees of no more than 1/3 of the Settlement Fund, plus reimbursement of litigation expenses. The Notice Plan complies with Fed. R. Civ. P. 23 and due process because, among other things, it informs Settlement Class Members of: (1) the nature of the action; (2) the essential terms of the Settlement, including the definition of the Class, the claims asserted, and the benefits offered; (3) the binding effect of a judgment if the Settlement Class Member does not request exclusion; (4) the process for objection and/or exclusion, including the time and method for objecting or requesting exclusion and that Settlement Class Members may make an appearance through counsel; (5) information regarding the payment of proposed Class Counsel attorneys' fees and expenses; and (6) how to make inquiries. Fed. R. Civ. P. 23(c)(2)(B).

24

Accordingly, the Notice Plan and Notice are designed to be the best practicable under the circumstances, apprise Settlement Class Members of the pendency of the action, and give them an opportunity to object or exclude themselves from the Settlement. *See Agnone v. Camden Cnty.*, No. 2:14-cv-00024-LGW-BKE, 2019 WL 1368634, at *9 (S.D. Ga. Mar. 26, 2019) (finding class notice mailed directly to settlement class members was the best practicable and satisfied concerns of due process). Thus, the Notice Plan should be approved. Fed. R. Civ. P. 23(c)(2)(A).

### E.    The Court Should Approve a Settlement Schedule

Plaintiffs request that the Court set a settlement schedule that would include, *inter alia*, deadlines for notice to Settlement Class Members; for Settlement Class Members to object to the Settlement, to opt out of the Settlement, and to make claims under the Settlement; and for the filing of papers in support of final approval and in support of attorneys' fees and expenses. A proposed schedule is included in the proposed Preliminary Approval Order. The Court will determine through the Final Approval Hearing whether the Settlement should be approved.

## V.    CONCLUSION

For these reasons, Plaintiffs and Class Counsel respectfully ask the Court to enter an Order Granting Plaintiffs' Motion for Preliminary Approval of Class Action Settlement.

Dated: August 23, 2024                    Respectfully submitted,

/s/ *Terence R. Coates*
Terence R. Coates*
**MARKOVITS, STOCK &
DEMARCO, LLC**
119 E. Court Street, Suite 530
Cincinnati, OH 45202
Telephone: (513) 651-3700
Facsimile: (513) 665-0219
tcoates@msdlegal.com

*Interim Co-Lead Counsel*

/s/ *MaryBeth V. Gibson*
MaryBeth V. Gibson
Georgia Bar No. 725843
**GIBSON CONSUMER LAW GROUP,
LLC**
4279 Roswell Road, Suite 208-108
Atlanta, GA 30342
Telephone: (678) 642-2503
mgibson@gibsonconsumerlawgroup.com

*Interim Liaison Counsel*

Bryan L. Bleichner*
**CHESTNUT CAMBRONNE PA**
100 Washington Avenue South, Suite 1700
Minneapolis, MN 55401
Telephone: (612) 339-7300
Facsimile: (612) 336-2940
bbleichner@chestnutcambronne.com

*Interim Co-Lead Counsel*

Nathan D. Prosser*
**HELLMUTH & JOHNSON PLLC**
8050 West 78th Street
Edina, MN 55439
Telephone: (952) 941-4005
Facsimile: (952) 941-2337
nprosser@hjlawfirm.com

Gary M. Klinger*
David K. Lietz*
**MILBERG COLEMAN BRYSON
PHILLIPS GROSSMAN PLLC**
227 W. Monroe Street, Ste. 2100
Chicago, IL 60606
Telephone: (866) 252-0878
gklinger@milberg.com
dklietz@milberg.com

Joseph M. Lyon*
**THE LYON FIRM**
2754 Erie Avenue
Cincinnati, OH 45208
Telephone: (513) 540-3618
jlyon@thelyonfirm.com

Todd S. Garber*
Andrew C. White*
**FINKELSTEIN, BLANKINSHIP,
FREI-PEARSON & GARBER, LLP**
One North Broadway, Suite 900
White Plains, New York 10601
Telephone.: (914) 298-3281
tgarber@fbfglaw.com
awhite@fbfglaw.com

*Plaintiffs' and Putative Class Counsel*

* Admitted *pro hac vice*

## <u>CERTIFICATE OF SERVICE AND</u>
## <u>LOCAL RULE 7.1(D) CERTIFICATION</u>

I hereby certify that on August 23, 2024, I electronically filed the foregoing with the Clerk of Court using the ECF system, which will send notification of such filing and effectuate service to all counsel of record in this matter, pursuant to Local Rule 5.1.

I further certify that this Unopposed Motion for Preliminary Approval of Class Action Settlement has been prepared with one of the fonts and point selections approved by the Court in Local Rule 5.1(C).

/s/ *Terence R. Coates*
Terence R. Coates

*Plaintiffs' Interim Co-Lead Counsel*