**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| | |
|---|---|
| CARLA TRACY, DARRYL BOWSKY, and DEBORAH HARRINGTON, individually and *on behalf of all others similarly situated*, | Judge Steven D. Grimberg |
| Plaintiffs, | Case No. 1:21-cv-02851 |
| v. | |
| ELEKTA, INC., and NORTHWESTERN MEMORIAL HEALTHCARE, | |
| Defendants. | |

## PLAINTIFFS' UNOPPOSED MOTION AND MEMORANDUM OF LAW IN SUPPORT OF FINAL APPROVAL OF CLASS ACTION SETTLEMENT

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ...................................................................................iv

I.      INTRODUCTION ....................................................................................1

II.     SUMMARY OF SETTLEMENT ............................................................3

        A.    The Settlement Classes.................................................................3

        B.    The Settlement Benefits ...............................................................4

              1.  Settlement Payments. .........................................................4

              2.  Illinois GIPA Claims..........................................................5

              3.  Pro Rata Cash Payment.......................................................6

              4.  *Cy Pres* Recipient...............................................................6

              5.  Business Practice Changes..................................................6

              6.  Release. ...............................................................................7

        C.    The Notice and Claims Process....................................................7

              1.  Notice. .................................................................................7

              2.  Payment of Administrative and Notice Costs. ..................8

              3.  Opt-Out and Objection Procedures. ...................................8

              4.  Fees and Costs.....................................................................9

III.    THE SETTLEMENT WARRANTS FINAL APPROVAL .....................9

        A.    Legal Standard for Final Approval of Class Action Settlement............10

        B.    Argument .....................................................................................11

              1.  The *Bennett* Factors Weigh in Favor of Final Approval .................11

                    a.    The Benefits of Settlement Outweigh the Risk of Future
                          Litigation .................................................................11

b. The Settlement Compares Favorably to Other Common Fund Data Breach Settlements...................................................12

c. Continued Litigation Would be Time Consuming and Expensive .................................................................................13

d. The Class Overwhelming Supports the Settlement .................14

e. Plaintiffs had Sufficient Information to Thoroughly Evaluate the Merits of the Case and Negotiate a Favorable Settlement .................................................................15

2. The Rule 23(e) Factors Support Final Approval .............................15

a. The Class was Adequately Represented ...................................15

b. The Settlement was Negotiated at Arm's Length .....................17

c. The Settlement Provides Class Members with Significant Cash Benefits ...........................................................................17

d. The Complexity, Expense, and Risk of Future Litigation ........18

e. The Terms Relating to Attorneys' Fees are Reasonable ..........19

f. No Other Agreements Exists under Rule 23(e)(3) ...................20

g. Class Members Are Treated Equally Relative to Each Other.........................................................................................20

IV. **THE COURT SHOULD CERTIFY THE SETTLEMENT CLASS** ......21

A. The Rule 23(a) Requirements are Satisfied ...........................................21

B. The Rule 23(b)(3) Requirements are Satisfied .....................................22

**CONCLUSION**.................................................................................................25

**CERTIFICATE OF COMPLIANCE** ................................................................27

**CERTIFICATE OF SERVICE** .........................................................................28

## TABLE OF AUTHORITIES

**Cases**

*Access Now, Inc. v. Claire's Stores, Inc.*,
    No. 00-14017, 2022 WL 1162422 (S.D. Fla. May 7, 2002).................................14

*Alghadeer Bakery & Marker, Inc. v. Worldpay US, Inc.*,
    No. 1:18-cv-02688-MLB, 2020 WL 10935986 (N.D. Ga. June 3, 2020) ...........19

*Amchem Prods., Inc. v. Windsor*,
    521 U.S. 591 (1997)..................................................................... 23, 25

*Ass'n for Disabled Ams., Inc. v. Amoco Oil Co.*,
    211 F.R.D. 457 (S.D. Fla. 2002)..........................................................11

*Bennett v. Behring Corp.*,
    737 F.2d 982 (11th Cir. 1984) ............................................................10

*Burhl v. Price Waterhousecoopers Int'l.*,
    257 F.R.D. 684 (S.D. Fla. 2008).........................................................22

*Cabot E. Broward 2 LLC v. Cabot*,
    No. 16-61217-CIV, 2018 WL 5905415 (S.D. Fla. Nov. 9, 2018).....................20

*Columbus Drywall & Insulation, Inc. v. Masco Corp.*,
    258 F.R.D. 545 (N.D. Ga. 2007)..........................................................15

*Cotter v. Checkers Drive-In Rests., Inc.*,
    No. 8:19-cv-1386, 2021 WL 3773414 (M.D. Fla. Aug. 25, 2021) ....................13

*Desue v. 20/20 Eye Care Network, Inc.*,
    No. 21-CIV-61275, 2023 WL 4420348 (S.D. Fla. July 8, 2023) .......................14

*Dickens v. GC Servs. Ltd. P'ship*,
    706 F. App'x 529 (11th Cir. 2017) ......................................................24

*Francisco v. Numismatic Guaranty Corp. of Am.*,
    No. 06-616677-CIV, 2008 WL 649124 (S.D. Fla. Jan. 31, 2008) .....................18

*In re Arby's Rest. Grp., Inc. Data Sec. Litig.*,
    No. 1:17-cv-1035-WMR, 2019 WL 2720818 (N.D. Ga. June 3, 2019)..............13

*In re Citrix Data Breach Litig.*,
No. 19-61350-CIV, 2021 WL 2410651 (S.D. Fla. Jun 11, 2021) ......................13

*In re Equifax Inc. Customer Data Security Breach Litig.*,
999 F.3d 1247 (11th Cir. 2021) .............................................................23

*In re Heartland Payment Sys., Inc. Customer Data Sec. Breach Litig.*,
MDL No. 09-2046, 2012 WL 896256 (S.D. Tex. Mar. 14, 2012) .....................18

*In re Lincare Holdings Inc. Data Breach Litig.*,
No. 8:22-cv-01472, 2024 WL 3104286 (M.D. Fla. June 24, 2024)...................19

*In re TJX Cos. Retail Sec. Breach Litig.*,
524 F. Supp. 2d 83 (D. Mass. 2007) ....................................................18

*In re TJX Cos. Retail Sec. Breach Litig.*,
246 F.R.D. 389 (D. Mass. 2007) .........................................................18

*Lone Star Nat'l Bank N.A. v. Heartland Payment Sys., Inc.*,
729 F.3d 421 (5th Cir. 2013) .............................................................18

*Lunsford v. Woodforest Nat'l Bank*,
No. 1:12-cv-103, 2014 WL 12740375 (N.D. Ga. May 19, 2014) ......................20

*McWhorter v. Ocwen Loan Servicing LLC*,
No. 2:15-cv-01831, 2019 WL 9171207 (N.D. Ala. Aug. 1, 2019) ....................20

*Morgan v. Pub. Storage*,
301 F. Supp. 3d 1237 (S.D. Fla. 2016) .................................................20

*Sacred Heart Health Sys., Inc. v. Humana Military Healthcare Servs., Inc.*,
601 F.3d 1159 (11th Cir. 2010) ..........................................................24

*SELCO Cmty. Credit Union v. Noodles & Co.*,
267 F. Supp. 3d 1288 (D. Colo. 2017).................................................18

*Terrill v. Electrolux Home Prods., Inc.*,
295 F.R.D. 671 (S.D. Ga. 2013) .........................................................21

*Waters v. Int'l Precious Metals, Corp.*,
190 F.3d 1291 (11th Cir. 1999) .........................................................19

*Williams v. Mohawk Indus., Inc.*,
    568 F.3d 1350 (11th Cir. 2009) ...........................................................................21

*Wolff v. Cash 4 Titles*,
    No. 03-22778-CIV, 2012 WL 5290155 (S.D. Fla. Sept. 26, 2012)....................19

**Statutes**

28 U.S.C. § 1715 ...................................................................................................8

410 ILCS 513 ........................................................................................................5

**Rules**

Fed. R. Civ. P. 23(b)(3)............................................................................. 23, 24, 25

Fed. R. Civ. P. 23(b)(3)(D) ...................................................................................23

Fed. R. Civ. P. 23(c)(2)...........................................................................................7

Fed. R. Civ. P. 23(c)(2)(B) .....................................................................................8

Fed. R. Civ. P. 23(e)(2) ............................................................................. 2, 10, 15

Fed. R. Civ. P. 23(e)(2)(A-D) ...............................................................................10

Fed. R. Civ. P. 23(e)(2)(C)(i)-(iv) .........................................................................11

Fed. R. Civ. P. 23(e).............................................................................................15

Fed. R. Civ. P. 23(e)(3).........................................................................................11

Consistent with this Court's August 28, 2024 Order Granting Preliminary Approval of Class Action Settlement (ECF No. 85), Plaintiffs Carla Tracy, Darryl Bowsky, and Deborah Harrington, on behalf of themselves and Class Members, respectfully request that the Court grant final approval of this class action settlement as it is fair, reasonable, and adequate. Plaintiffs conferred with Defendants and Defendants do not oppose this Motion.

## I.    INTRODUCTION

Plaintiffs move for final approval of the Settlement with Defendants Elekta, Inc. ("Elekta") and Northwest Memorial Healthcare ("NMH") (collectively "Defendants"). The Settlement, if approved by the Court, will resolve just under five-hundred thousand Class Members' claims (including Plaintiffs') against Defendants arising from the Data Incident.

The terms of the Settlement are included in the Settlement Agreement (hereinafter, "Settlement" or "SA"). ECF No. 84-1.[1] The Court previously granted preliminary approval of the proposed Settlement (ECF No. 85). Notice of the Settlement has now been disseminated to Class Members under the Notice Program set forth in the Settlement Agreement and detailed in the Settlement Administrator's declaration in support of preliminary approval. ECF No. 84-3.

---

[1] Unless defined, capitalized terms have the same meaning attributable to them in the Settlement Agreement. ECF No. 84-1.

The Settlement was reached following two mediation sessions with experienced data privacy class action mediator, Jill Sperber. The negotiations were conducted at arm's-length and produced a Settlement that is fair, reasonable, and adequate and meets and/or exceeds the established legal standards governing final approval. Fed. R. Civ. P. 23(e)(2). The Settlement negotiated on behalf of the Class provides for the creation of an Eight Million Nine Hundred Thousand Dollar ($8,900,000) non-reversionary Settlement Fund. The Settlement Fund shall be used GIPA[2] Cash Compensation ($1,000 cap) or *pro rata* Cash Compensation; (2) reimbursement of Out-of-Pocket Losses of up to $5,000; (2) Notice and Settlement Administration Expenses; (3) Attorneys' Fees and Expenses as awarded by the Court. Any remaining funds will be divided *pro rata* to potentially increase the *pro rata* Cash Compensation Payments to Class Members. If funds remain after distribution of Settlement Payment, a subsequent final payment will be distributed to a Non-Profit Residual Recipient and subject to court approval. Defendants will also make business practice changes to protect the data security of Class Members. The costs associated with these business practice changes will be separate and apart from the Settlement Amount.

---

[2] "GIPA" is the Illinois Genetic Information Protection Act, 410 ILCS 513 *et al*. *See* SA ¶ 1.19. The "Illinois GIPA Subclass" means all persons residing in the State of Illinois who had Genetic Information hosted by Elekta compromised as a result of the Data Incident. *Id*. ¶ 1.20.

In support of their Motion, Plaintiffs rely on the Settlement Agreement and attachments (ECF No. 84-1), the Declaration of Class Counsel in Support of Preliminary Approval of Class Action Settlement (ECF No. 84-2), and the Declaration of the Settlement Administrator ("Settlement Administrator Decl.") (**Exhibit 1**).

The Deadline to file a claim is December 26, 2024. As of December 4, 2024, 11,907 valid claims have been submitted. Settlement Administrator Decl. ¶ 15, Table 2. The Opt-Out and Objection deadlines were November 26, 2024 and as of December 4, 2024, 9 individuals have opted out of the Settlement and there are no objections. *Id.* ¶¶ 16-17.

## II.    SUMMARY OF SETTLEMENT

This Settlement would resolve all claims related to the Data Incident on behalf of the Settlement Classes. ECF No. 84-1, Settlement Agreement "SA".

### A.    The Settlement Classes

The Court's Preliminary Approval Order defines the Settlement Classes as:

*Nationwide Class*:

> All persons residing in the United States who had their Sensitive Information hosted by Elekta compromised as a result of the Data Security Incident.

*Illinois GIPA Subclass*:

> All persons residing in the State of Illinois who had Genetic Information hosted by Elekta compromised as a result of the Data Security Incident.

Specifically excluded from the Settlement Class are (1) the judge presiding over the class action lawsuit and the judge's direct family members; (2) the Defendants, their subsidiaries, parent companies, successors, predecessors, and any entity in which the Defendants or their parents have a controlling interest, and their current or former officers, directors, and employees; and (3) Settlement Class Members who submit a valid request to be excluded from the Settlement. SA, ¶ 1.42. The Settlement Class is comprised of approximately 489,932 individuals nationwide. Settlement Administrator Decl. ¶¶ 6, 8, 14. Under the Proposed Settlement, Defendants agreed to pay a total of $8,900,000 into the Settlement fund, which will be used to make payments of all Costs of Settlement Administration, Class Counsel's Attorneys' Fees and Expenses, approved Out-of-Pocket Loss Claims, and approved *Pro Rata* Cash Payments, including GIPA Cash Compensation. *Id.* ¶¶ 3.1, 3.3.

### B.     The Settlement Benefits

#### 1.     Settlement Payments.

Each Settlement Class Member is eligible to receive reimbursement for documented out-of-pocket unreimbursed losses incurred as a result of the Data Incident ("Out-of-Pocket Losses") subject to the settlement cap of $5,000. *See* SA ¶ 3.2. Amounts that are eligible to be reimbursed as Out-of-Pocket Losses must

include supporting documentation and more likely than not were the result of the Data Incident. *Id*. Out-of-Pocket Losses include but are not limited to, unreimbursed payment card fees or bank fees, card reissuance fees, unreimbursed overdraft fees, unreimbursed charges related to unavailability of funds, unreimbursed late fees, unreimbursed over-limit fees and unreimbursed fees related to an account being frozen or otherwise unavailable due to the Data Incident, cell, internet or text charges, unreimbursed costs or charges for obtaining credit reports or credit freezes incurred on or after May 2021 and other unreimbursed costs associated with fraud or identity theft, including attorneys' fees and accountant fees, and postage costs. *Id*. ¶ 1.29.

      2.   <u>Illinois GIPA Claims.</u>

Settlement Class Members may submit a claim via the Claim Form for a GIPA Cash Payment. After distribution of attorneys' fees, expenses, administrative fees, compensation of Out-of-Pocket expenses, the Settlement Administrator will make *pro rata* settlement payments for 50% of any remaining settlement funds to each Illinois GIPA Subclass Member who submits a valid claim for GIPA cash compensation, which is capped at $1,000 per individual. SA ¶ 3.1(a).

The GIPA Cash Payment claim requires the attestation by Class Members stating that they are current or former Illinois residents and that they personally shared or provided their Genetic Information with NMH or any Elekta Customer

located in Illinois at any time before the Data Incident. *Id*. The funds remaining after paying all GIPA Cash Payments up to the $1,000 cap will be distributed to Settlement Class Members who make pro rata Cash Payment claims. *Id*.

### 3.    Pro Rata Cash Payment.

Settlement Class Members may submit a claim via the Claim Form for a *pro rata* Cash Compensation Payment. SA ¶ 3.1(b). After distribution of attorneys' fees, Class Counsel's Litigation Expenses, Administrative Fees, and Compensation for Out-of-Pocket Expenses, the Settlement Administrator will make *pro rata* settlement payments of 50% of any remaining funds to each Class Member who submits a claim plus any amount remaining from the GIPA Cash Payments that exceed the $1,000 cap. *Id*.

### 4.    *Cy Pres* Recipient.

If any monies remain in the Qualified Settlement Fund more than one hundred-twenty (120) days after the distribution of Settlement Payments, a subsequent payment will be distributed to a Non-Profit Residual Recipient to be proposed by Class Counsel and agreed by Elekta, subject to court approval. SA ¶ 3.8.

### 5.    Business Practice Changes.

Elekta agrees to provide written confirmation to Class Counsel of business practice changes it has taken after the Data Incident to protect the data security of

the Settlement Class.  All costs associated with these business practice changes will be separate from the Settlement Amount. *Id.* ¶ 3.9.

      6.    <u>Release.</u>

The release in this case is tailored to the claims that have been pleaded or could have been pleaded and final upon the date judgment becomes final. Settlement Class Members who do not opt-out from the Settlement Agreement will release claims related to the Data Incident. SA ¶¶ 7.2, 9.1.

**C.    The Notice and Claims Process**

      1.    <u>Notice.</u>

The Parties agreed to use EisnerAmper as the Notice and Settlement Administrator ("Settlement Administrator"). SA ¶ 1.40. Based on the Court's preliminary approval Order (ECF No. 85, ¶ 8), Class Counsel and the Settlement Administrator implemented a direct mail notice plan, including individual direct mail notice to all members who could be identified through reasonable effort. Fed. R. Civ. P. 23(c)(2). ECF No. 84-3, ¶ 11. The direct mail notice consisted of a postcard, with a tear-off claim form and pre-paid postage (ECF No. 84-1, Ex. D) mailed via United States Postal Service ("USPS") First Class Mail to the Settlement Class Members identified in the Class Member Information list. *Id.* On September 27, 2024, the Settlement Administrator posted the Notice to the Settlement Website located at www.elektadatasettlement.com. (ECF No. 84-3, ¶ 12). On September 27,

2024, the Settlement Administrator commenced mailing Notice to 489,932 Settlement Class Members via U.S. Mail. Settlement Administrator Decl. ¶ 14. The Notice reached 88.7% of the 489,932 Settlement Class Members. *Id*., 14. This goes well beyond the 70% notice threshold that is often cited as meeting the requirements of Rule 23(c)(2)(B) and due process. Federal Judicial Center, *Judges' Class Action Notice and Claims Process Checklist and Plain Language Guide*, at 3 (2010), www.fjc.gov/sites/default/files/2012 /NotCheck.pdf

2.      Payment of Administrative and Notice Costs.

Defendants agreed to pay the cost of providing CAFA Notice, separate and apart from the Settlement Fund. SA ¶ 1.33. Pursuant to 28 U.S.C. § 1715, the Settlement Administrator, on behalf of Defendants, coordinated and administered the distribution and mailing of CAFA Notice on August 30, 2024. ECF No. 87-1. The remainder of the notice costs and administration expenses will be paid out of the Settlement Fund.

3.      Opt-Out and Objection Procedures.

Class Members had up to and including November 26, 2024 to decide whether to object or to exclude themselves from the Settlement. SA ¶¶ 7.1, 8.1. Class Members wishing to opt out of the Settlement Classes were required to submit a

Request for Exclusion to the Settlement Administrator postmarked no later than November 26, 2024, as described in the Long Notice. SA, Ex. B, ¶ 15.[3]

Any Settlement Class Member who wished to object to the Settlement or opt-out, was required to submit a timely written notice of his or her objection or opt-out to the Court and the Settlement Administrator no later than November 26, 2024.

### 4.    Fees and Costs.

On November 12, 2024, Class Counsel filed Plaintiffs' Motion for Attorneys' Fees and Litigation Expenses. ECF No. 88. Class Counsel seek $2,966,666.66, or 33.33% of the Settlement Fund to proposed Class Counsel for attorneys' fees and $23,688.19 in costs and expenses. *Id.*

## III.    THE SETTLEMENT WARRANTS FINAL APPROVAL

The $8,900,000 non-reversionary common fund settlement for approximately 489,932 Class Members including several forms of cash payments is fair, reasonable, and adequate when analyzed under the relevant factors for determining whether to grant final approval of class action settlement.

---

[3] The exact date of exclusion and opt out of November 26, 2024, is based on the date the Court issued its Preliminary Approval Order on August 28, 2024. ECF No. 85, ¶ 9. The Settlement Timeline indicates that the postmark deadline for Requests for Exclusion (opt outs) or Objections is "60 days after commencement of Notice Plan," which is "30 days after entry of Preliminary Approval Order." *Id.*

## A.    Legal Standard for Final Approval of Class Action Settlement

Class actions may be settled only upon the court's determination that the settlement is "fair, reasonable, and adequate" after considering a number of factors. Fed. R. Civ. P. 23(e)(2). The Eleventh Circuit has established the six *Bennett* factors to evaluate whether to grant final approval of class action settlement: "(1) the likelihood of success at trial; (2) the range of possible recovery; (3) the point below the range of possible recovery at which a settlement is fair, adequate and reasonable; (4) the complexity expense and duration of litigation; (5) the substance and amount of opposition to the settlement; and (6) the stage of the proceedings at which the settlement was achieved." *Bennett v. Behring Corp.*, 737 F.2d 982, 986 (11th Cir. 1984).

Federal Rule 23(e)(2) also identifies several factors that must be considered when determining whether a class action settlement is fair, reasonable, and adequate: "whether (A) the class representatives and class counsel have adequately represented the class; (B) the proposal was negotiated at arm's length; (C) the relief provided for the class is adequate . . . ; and (D) the proposal treats all class members equitably relative to each over." Fed. R. Civ. P. 23(e)(2)(A-D). In considering whether the settlement relief provided is sufficient, courts must consider "(i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the

terms of any proposed award of attorneys' fees including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3)." Fed. R. Civ. P. 23(e)(2)(C)(i)-(iv).  In considering these factors, "[t]here is an overriding public interest in favor of settlement, particularly in class actions that have the well-deserved reputation of being most complex." *Ass'n for Disabled Ams., Inc. v. Amoco Oil Co.*, 211 F.R.D. 457, 466 (S.D. Fla. 2002).

### B.    Argument

#### 1.    The *Bennett* Factors Weigh in Favor of Final Approval

##### a. The Benefits of the Settlement Outweigh the Risks of Future Litigation

The cash payments to Class Members for potentially several types of alleged injury are a strong recovery for Class Members compared to the backdrop of uncertainty that continued litigation brings. For example, in the absence of the Settlement, Plaintiffs would need to successfully petition the Court for class certification and survive a motion for summary judgment before having their day in court for a possible trial. Continued litigation of this matter would bring uncertain results and risks. A Settlement now on the terms Plaintiffs were able to forge in the form of a non-reversionary $8,900,000 common fund providing cash benefits to Class Members compares well against the risk inherent with future litigation in a data breach class action. Accordingly, this factor supports final approval.

11

> b. *The Settlement Compares Favorably to Other Common Fund Data Breach Settlements*

The $8,900,000 non-reversionary common fund is a sound recovery for the Settlement Class of approximately 489,932 individuals and compares well with other recent data breach cases. The chart below compares the amount recovered per Settlement Class Member against the amount recovered in several other recent data breach class action settlements[4] and highlights the beneficial result achieved for the Settlement Class:

| Case Name | Case Number | Settlement Amount | Class Size | Per Person |
|---|---|---|---|---|
| *Sherwood v. Horizon Actuarial Services, LLC* | No. 1:22-cv-1495 (N.D. Ga.) | $8,733,446.36 | 4,386,969 | $1.99 |
| *In re C.R. England, Inc. Data Breach Litigation* | No. 2:22-cv-374 (D. Utah) | $1,400,000 | 224,572 | $6.23 |
| *Reynolds v. Marymount Manhattan College* | No. 1:22-cv-06846 (S.D.N.Y.) | $1,300,000 | 191,752 | $6.78 |
| *Julien v. Cash Express, LLC* | No. 2022-CV-221 (Putnam Cty., Tenn.) | $850,000 | 106,000 | $8.02 |
| *Tucker v. Marietta Area Health Care* | No. 2:22-CV-00184 (S.D. Ohio) | $1,750,000 | 216,478 | $8.08 |
| *In re Overby-Seawell Co., Customer Data* | No. 1:23-md-03056-SDG (N.D. Ga.) | $6,000,000 | 607,924 | $9.87 |

---

[4] Counsel recognize that different types of impacted data and other factors may impact the settlement terms of every data security incident class action.

| | | | | |
|---|---|---|---|---|
| *Security Breach Litig.* | | | | |
| *Phillips v. Bay Bridge Administrators, LLC* | No. 23-cv-00022 (W.D. Tex.) | $2,516,890 | 251,890 | $10.00 |
| *Tiller v. Hilb Group Operating, LLC* | No. 3:23-cv-00759 (JAG) (E.D. Va.) | $1,600,000 | 108,954 | $14.68 |
| *Migliaccio v. Parker Hannifin Corp.* | No. 1:22-CV-00835 (N.D. Ohio) | $1,750,000 | 115,843 | $15.10 |
| ***Tracy v. Elekta, Inc.*** | **No. 1:21-cv-2851 (N.D. Ga.)** | **$8,900,000** | **489,932** | **$18.17** |
| *Anderson v. U-Haul Int'l, Inc.* | No. CV-22-01565 | $5,085,000 | 259,000 | $19.63 |

The roughly $18.17 per Settlement Class Member recovery in this case exceeds the amount recovered in the majority of the cases listed above.

> *c. Continued Litigation Would be Time Consuming and Expensive*

Data breach class actions are complex and remain unpredictable. *See Cotter v. Checkers Drive-In Rests., Inc.*, No. 8:19-cv-1386, 2021 WL 3773414, at *12 (M.D. Fla. Aug. 25, 2021) (noting data breach class actions present "serious risks" due, in part, to "the ever-developing law surrounding data breach cases"); *In re Citrix Data Breach Litig.*, No. 19-61350-CIV, 2021 WL 2410651, at *3 (S.D. Fla. Jun 11, 2021) ("Data breach cases in particular present unique challenges with respect to issues like causation, certification, and damages."); *In re Arby's Rest. Grp., Inc. Data Sec. Litig.*, No. 1:17-cv-1035-WMR, 2019 WL 2720818, at *3 (N.D. Ga. June

3, 2019) ("Further, data breach litigation involves the application of unsettled law with disparate outcomes across states and circuits. Georgia law, in particular, presents challenges."). This case is no exception. The pursuit of nationwide claims and relief presented complex issues of law and fact. These issues underscore the fact that continued litigation would be time consuming and expensive and weigh in favor of final approval.

### d.  The Class Overwhelming Supports the Settlement

The Class has responded very favorably to this Settlement in that 11,907 valid claims have been submitted out of the approximately 489,932 Class Members. Settlement Administrator Decl. ¶ 15, Table 2. In addition to the claims, there were only nine (9) exclusion requests with one of those being untimely and no objections. *Id*. ¶ 16. The 9 exclusion requests equate to a very low .0018% of the Class excluding themselves from the Settlement. The absence of any objection to the settlement "strongly favors" final approval. *Desue v. 20/20 Eye Care Network, Inc.*, No. 21-CIV-61275, 2023 WL 4420348, at *9 (S.D. Fla. July 8, 2023); *see also Access Now, Inc. v. Claire's Stores, Inc.*, No. 00-14017, 2022 WL 1162422, at *7 (S.D. Fla. May 7, 2002) ("The fact that no objections have been filed strongly favors approval of the settlement.").

Given the lack of objection, only 9 timely exclusion requests, and roughly 12,000 current valid claims, the fifth *Bennett* factor weighs in favor of final approval as the Class has responded favorably to the Settlement and its cash benefits.

> e. *Plaintiffs had Sufficient Information to Thoroughly Evaluate the Merits of the Case and Negotiate a Favorable Settlement*

Plaintiffs were well informed when negotiating the resolution of this Litigation. Declaration of Terence R. Coates in Support of Plaintiffs' Motion for Preliminary Approval of Class Action Settlement ("Coates Preliminary Approval Decl."), ECF No. 84-2, ¶¶ 6-8. Plaintiffs submitted a list of settlement discovery requests to Defendants for the purpose of gaining sufficient information to make a well-informed demand. Before submitting their demand for a class-wide settlement, Plaintiffs knew the size of the class, the data elements potentially impacted by the Data Incident, and that Defendants had insurance coverage for Plaintiffs' claims. Coates Preliminary Approval Decl. ¶ 8. This information gave Plaintiffs the ability to analyze their own and the Class's claims and to understand the potential for class-wide damages. *Id.* Accordingly, Plaintiffs had sufficient information to evaluate the merits of their claims. This factor weighs in favor of final approval.

> 2.    The Rule 23(e) Factors Support Final Approval

> a. *The Class was Adequately Represented*

The first step in finally approving a class action settlement under Rule 23(e)(2) involves two questions: "(1) whether the [class representatives] have interests

antagonistic to the interests of other class members; and (2) whether the proposed class's counsel has the necessary qualification and experience to lead the litigation." *Columbus Drywall & Insulation, Inc. v. Masco Corp.*, 258 F.R.D. 545, 555 (N.D. Ga. 2007). For purposes of settlement, Plaintiffs are adequate representatives for the Class and GIPA Subclass because they asserted claims against Defendants due to their Sensitive Information being impacted in the Data Incident – the same Data Incident that also impacted the Sensitive Information of the Class. Accordingly, for these purposes the Class Representatives have the same claims and same cause of their injuries as the rest of the Class Members. Furthermore, Plaintiffs stayed apprised of the case's progress and remained engaged in this Litigation by reviewing the allegations in the Complaint and reviewing and approving the terms of the Settlement Agreement. Coates Preliminary Approval Decl. ¶ 24.

Class Counsel are appropriately qualified to lead this Litigation on behalf of Plaintiffs and the Class. Class Counsel have represented plaintiffs in state and federal courts across the county in data privacy class actions and have achieved many recent favorable results for plaintiffs. *Id*. ¶¶ 3-4. Class Counsel's skill in utilizing informed settlement discovery requests to receive the information necessary to make an informed demand and in procuring tangible cash benefits for Class Members further demonstrates that Class Counsel are sufficiently qualified to serve as Class Counsel in this Litigation.

16

### b. The Settlement was Negotiated at Arm's Length

The Settlement was negotiated over several months with Plaintiffs submitting a demand to Defendants only after receiving details on the class size, details on the data elements impacted by the Data Incident, and that Defendants had potentially credible defenses. Coates Preliminary Decl. ¶¶ 8, 10. Plaintiffs and Defendants then participated in two mediation sessions with skilled data privacy class action mediator Jill Sperber.  Ultimately, Plaintiffs were able to achieve their preferred settlement structure of a non-reversionary common fund that will permit Class Members to receive cash payments and the potential for a *pro rata* increase to the *pro rata* cash payment to the extent any settlement funds remain unclaimed through the claims process. These facts demonstrate that the Settlement was negotiated at arm's length with the assistance of counsel for each side who are experienced in handling data privacy class actions.

### c. The Settlement Provides Class Members with Significant Cash Benefits

The Settlement provides Class Members with cash benefits including up to $5,000 in documented out-of-pocket losses and either a Pro Rata Cash Payment or Pro Rata GIPA Cash Payment. These cash payments permit Class Members to pick and choose one or two of the cash settlement benefits through the use of a simplified tear-off claim form that was included in the Short Form Notice or online via the Settlement Website. The *pro rata* nature of the cash payments is also important

17

because it permits Class Members to increase their settlement benefits (capped at $1,000 for the GIPA Cash Payment) to the extent that any funds remain in the Settlement Fund after claims have been processed.

### d. The Complexity, Expense, and Risk of Future Litigation

"Class actions are inherently complex to prosecute because the legal and factual issues are complicated and uncertain in outcome." *Francisco v. Numismatic Guaranty Corp. of Am.*, No. 06-616677-CIV, 2008 WL 649124, at *15 (S.D. Fla. Jan. 31, 2008). Data breach cases are complex and carry significant risk in that some cases have failed at the dismissal or class certification stages.[5] *See, e.g.*, *SELCO Cmty. Credit Union v. Noodles & Co.*, 267 F. Supp. 3d 1288, 1292 (D. Colo. 2017) (dismissing a nationwide class action for a data breach at Noodles & Co, holding Colorado's economic loss rule prohibited tort damages caused by the data breach); *In re Heartland Payment Sys., Inc. Customer Data Sec. Breach Litig.*, MDL No. 09-2046, 2012 WL 896256 (S.D. Tex. Mar. 14, 2012) (after three rounds of dismissal motions, dismissing among other claims, negligence), *rev'd sub nom.*, *Lone Star Nat'l Bank N.A. v. Heartland Payment Sys., Inc*., 729 F.3d 421, 424 (5th Cir. 2013) (concluding that New Jersey's economic loss doctrine could not be applied at dismissal stage); *In re TJX Cos. Retail Sec. Breach Litig.*, 524 F. Supp. 2d 83 (D.

---

[5] Understanding that there is overlap between *Bennett* factors and the Rule 23(e) factors relating to the complexity, expense, and risks of future litigation, Plaintiffs incorporate their arguments above under Section III.B.1.c. above to avoid repetition.

Mass. 2007) (dismissing claims for negligence and negligence per se), *aff'd*, 564 F.3d 489 (1st Cir. 2009), and 246 F.R.D. 389, 400 (denying class certification because individual issues of reliance, causation, and damages predominated).

### e. The Terms Relating to Attorneys' Fees are Reasonable

Here, the attorneys' fees request of one-third of the $8,900,000 common fund is consistent with the Settlement Agreement, the content of the Notices, and the Motion for Attorneys' Fees and Litigation Expenses that were filed with the Court and posted on the Settlement Website. Furthermore, Class Counsel's attorneys' fees request of one-third of the common fund is consistent with fee awards in similar common fund settlements within this Circuit. *See, e.g.*, *Sherwood v. Horizon Actuarial Services, LLC*, No. 1:22-cv-1495-ELR (ECF No. 94) (N.D. Ga. Apr. 2, 2024) (approving attorneys' fees of $2,911,148.79 consisting of 1/3 of the $8,733,446.36 settlement fund in a data breach class action); *In re Lincare Holdings Inc. Data Breach Litig.*, No. 8:22-cv-01472, 2024 WL 3104286, at *3-4 (M.D. Fla. June 24, 2024) (approving attorneys' fees of $2,416,666.67 consisting of 1/3 of the $7,250,000 settlement fund in a data breach class action); *Wolff v. Cash 4 Titles*, No. 03-22778-CIV, 2012 WL 5290155, at *5-6 (S.D. Fla. Sept. 26, 2012) ("The average percentage award in the Eleventh Circuit mirrors that of awards nationwide -roughly one-third"); *Alghadeer Bakery & Marker, Inc. v. Worldpay US, Inc.*, No. 1:18-cv-02688-MLB, 2020 WL 10935986, at *4 (N.D. Ga. June 3, 2020) ("The fee

represents one-third of the $15 million cash settlement fund, which the Court finds to be reasonable and consistent with awards in similar cases in this Circuit."); *Waters v. Int'l Precious Metals, Corp.*, 190 F.3d 1291, 1292-98 (11th Cir. 1999) (affirming attorneys' fees of 1/3 of the $40 million common fund); *Lunsford v. Woodforest Nat'l Bank*, No. 1:12-cv-103, 2014 WL 12740375, at *15 (N.D. Ga. May 19, 2014) (fee award of 1/3 of the common fund); *Cabot E. Broward 2 LLC v. Cabot*, No. 16-61217-CIV, 2018 WL 5905415, at *7-8 (S.D. Fla. Nov. 9, 2018) (awarding fee of $33,333,333 of the $100 million common fund); *Morgan v. Pub. Storage*, 301 F. Supp. 3d 1237, 1257 (S.D. Fla. 2016) (noting that "a fee award of 33% … is consistent with attorneys' fees awards in federal class actions in this Circuit."). Class Counsel's attorneys' fee request of 1/3 ($2,966,666,67) of the $8,900,000 common fund is reasonable because it is within the range typically approved by courts within the Eleventh Circuit.

### f. No Other Agreements Exist under Rule 23(e)(3)

The Settlement Agreement and attachments are the only agreements impacting the Settlement. Accordingly, there are no additional agreements for the Court to consider. This factor also supports final approval.

### g. Class Members are Treated Equitably Relative to Each Other

Each Class Member is eligible to submit a claim for one or more cash settlement benefits. Furthermore, all Class Members were afforded ample

opportunity to opt-out or object to the Settlement. *See McWhorter v. Ocwen Loan Servicing LLC*, No. 2:15-cv-01831, 2019 WL 9171207, at *12 (N.D. Ala. Aug. 1, 2019) (noting that class members' ability to exclude themselves from a settlement indicates equitable treatment of class members and supports final approval).

## IV.    THE COURT SHOULD CERTIFY THE SETTLEMENT CLASS

### A.    The Rule 23(a) Requirements are Satisfied

Rule 23(a)'s numerosity, commonality, typicality, and adequacy requirements are satisfied for purposes of this Settlement.

*Numerosity*: The Class of approximately 489,932 individuals is sufficiently "numerous that joinder of all class members is impracticable" thereby satisfying Rule 23(a)'s numerosity requirement.

*Commonality*: Commonality "requires 'that there be at least one issue whose resolution will affect all or a significant number of putative class members," *Williams v. Mohawk Indus., Inc.*, 568 F.3d 1350, 1355 (11th Cir. 2009), and "is generally satisfied when a plaintiff alleges that defendants have engaged in a standardized course of conduct that affects all class members." *Terrill v. Electrolux Home Prods., Inc*., 295 F.R.D. 671, 685 (S.D. Ga. 2013), *vacated and remanded on other grounds*, *Brown v. Electrolux Home Prods*., 817 F.3d 1225 (11th Cir. 2016). Here, Plaintiffs, on behalf of all Class Members, assert that the Class's Sensitive Information was compromised as a result of the Data Incident, and the Class brings

the same legal claims based on Defendants' common conduct. All Class Members' claims arise out of Defendants' conduct resulting in the Data Incident. Accordingly, commonality is satisfied for purposes of settlement.

*Typicality*: In order to satisfy the typicality requirement of Rule 23(a)(3), the claims or defenses of the representative parties must be typical of the claims or defenses of the class. "Typicality is satisfied where the named plaintiffs' claims arise from the same event or pattern or practice and are abed on the same legal theory as the claims of the class" *Burhl v. Price Waterhousecoopers Int'l.*, 257 F.R.D. 684, 689 (S.D. Fla. 2008). Here, the claims of all Class Members involve Defendants' alleged failure to protect Plaintiffs' and Class Members' Sensitive Information. Thus, Plaintiffs' claims are typical of those of the claims of the Class, and they are appropriate Class Representatives. Typicality is satisfied for purposes of settlement.

*Adequacy*: As mentioned above, Plaintiffs and Class Counsel have adequately represented the Class. Accordingly, Rule 23(a)'s adequacy requirement is satisfied for purposes of this settlement. With all four of Rule 23(a)'s requirements met in this case, final class certification is warranted.

## B.    The Rule 23(b)(3) Requirements are Satisfied

Final class certification is also appropriate because Plaintiffs and the Class meet Rule 23(b)(3)'s predominance and superiority requirements for purposes of this settlement. Rule 23(b)(3) requires that "questions of law or fact common to class

members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." *In re Equifax Inc. Customer Data Security Breach Litig.*, 999 F.3d 1247, 1275 (11th Cir. 2021). When assessing predominance and superiority, the court may consider that the class will be certified for settlement purposes only, and that a showing of manageability at trial is not required. *See Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997) ("Confronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems, *see* Fed. Rule Civ. P. 23(b)(3)(D), for the proposal is that there be no trial.").

For purposes of settlement, the common factual and legal questions all cut to the issues "at the heart of the litigation." Indeed, the answers to these questions are not tangential or theoretical such that the litigation will not be advanced by certification. Rather, they go right to the center of the controversy, and the answers will be the same for each Class Member. As such, because the class-wide determination of these issues will be the same for everyone and will determine whether any class member has a right of recovery, the predominance requirement is readily satisfied for settlement.

The second prong of Rule 23(b)(3)—that a class action is superior to other available methods for the fair and efficient adjudication of the controversy—is also

readily satisfied for the purpose of this settlement. *See* Fed. R. Civ. P. 23(b)(3). A superiority analysis pursuant to Rule 23(b)(3) involves an examination of "the relative advantages of a class action suit over whatever other forms of litigation might be realistically available to the plaintiffs." *Sacred Heart Health Sys., Inc. v. Humana Military Healthcare Servs., Inc.*, 601 F.3d 1159, 1183-84 (11th Cir. 2010) (internal quotation omitted). The Agreement provides Settlement Class Members with certain relief and contains well-defined administrative procedures to ensure due process. This includes the right of any Class Member to object to it or to request exclusion. Moreover, there is no indication that Class Members have an interest in individual litigation or an incentive to pursue their claims individually, given the amount of damages likely to be recovered, relative to the resources required to prosecute such an action. *See Dickens v. GC Servs. Ltd. P'ship*, 706 F. App'x 529, 538 (11th Cir. 2017) (describing "the ways in which the high likelihood of a low per-class-member recovery militates in favor of class adjudication").

For purposes of settlement adjudicating individual actions here is impracticable. The amount in dispute for individual class members is too small, the technical issues are too complex, and the required expert testimony and document review would be far too costly. In no case are the individual amounts at issue sufficient to allow anyone to file and prosecute an individual lawsuit—at least not with the aid of competent counsel. Instead, the individual prosecution of Class

Members' claims would be prohibitively expensive, and, if filed, would needlessly delay resolution and lead to inconsistent rulings. Because this Litigation is being settled on a class-wide basis, such theoretical inefficiencies are resolved, and the Court need not consider further issues of manageability relating to trial. *See Amchem*, 521 U.S. at 620 ("[c]onfronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems, for the proposal is that there will be no trial.").

Thus, the Court should grant final approval of class action settlement including finally certifying the Settlement Class under Rule 23(b)(3).

## <u>CONCLUSION</u>

For these reasons, Plaintiffs and Class Counsel respectfully ask the Court to enter an Order Granting Final Approval of Class Action Settlement. A proposed Order Granting Final Approval of Class Action Settlement is attached as **<u>Exhibit 2</u>**.

Dated: December 6, 2024          Respectfully submitted,

*/s/ Terence R. Coates*
Terence R. Coates (pro hac vice)
**MARKOVITS, STOCK & DEMARCO, LLC**
119 East Court Street, Suite 530
Cincinnati, OH 45202
(513) 651-3700
tcoates@msdlegal.com

**GIBSON CONSUMER LAW GROUP, LLC**
*/s/ MaryBeth V. Gibson*
MaryBeth V. Gibson
Georgia Bar No. 725843

4729 Roswell Road, Suite 208
Atlanta, GA 30342
(678) 642-2503
marybeth@gibsonconsumerlawgroup.com

Bryan L. Bleichner (pro hac vice)
**CHESTNUT CAMBRONNE PA**
100 Washington Ave. S., Suite 1700
Minneapolis, MN 55401
(612) 339-7300
bbleichner@chestnutcambronne.com

*Class Counsel for Plaintiffs*

## **CERTIFICATE OF COMPLIANCE**

Pursuant to LR 7.1(D), I hereby certify that the foregoing has been prepared in Times New Roman 14 point, one of the fonts and points approved by the Court in LR 5.1(C).

*/s/ Terence R. Coates*
Terence R. Coates

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this date a copy of the foregoing was served upon all parties by filing with the Court's CM/ECF in accordance with Fed. R. Civ. P. 5(b)(2)(E).

Dated: December 6, 2024.

*/s/ Terence R. Coates*         
Terence R. Coates
